# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

MICHAEL PENNELL,          )
                                    )

       Petitioner,         )
                                    )

      vs.              )          **Case No. 4:17CV849JCH**
                                    )

RONDA PASH,            )
                                    )

       Respondent.     )

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Missouri State prisoner Michael Pennell. (ECF 2). The motion is fully briefed and ready for disposition.[1]

## BACKGROUND

On March 28, 2012, in the Circuit Court of Ralls County, Missouri, a jury found Petitioner guilty of two counts of distribution, delivery, or sale of a controlled substance, in violation of Mo. Rev. Stat. § 195.211. (ECF 9.4 at 87-88). On March 28, 2012, the trial court sentenced Petitioner, as a prior and persistent

---

[1] Petitioner requested and was granted numerous extensions of time to file a reply to the Response to the Order to Show Cause. Nonetheless, Petitioner has not filed a reply.

offender, to 20 years imprisonment for each count with the sentences to be served concurrently. (ECF 9.4 at 93). On April 23, 2013, the Missouri Court of Appeals affirmed Petitioner's conviction and sentence. (ECF 9.3). Petitioner timely filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15 (ECF 9.10 at 6-19), which was denied (ECF 9.10 at 74-91). The Missouri Court of Appeals affirmed the denial of post-conviction relief on March 29, 2016, and issued the mandate on April 20, 2016. (ECF 9.8 and .9).

In his § 2254 Petition, Petitioner raises the following claims for relief:

(1) The State violated Petitioner's Fourth Amendment rights by arresting him without probable cause;

(2) The State violated Petitioner's Fourth, Fifth, Sixth and Fourteenth Amendment rights "by charging [him] with a[n] 'invalid' probable cause affidavit";

(3) The State violated Petitioner's Fourth, Fifth, Sixth, and Fourteenth Amendment rights "by charging [him] and not having jurisdiction"; and

(4) The State violated Petitioner's Fourth, Fifth, Sixth, and Fourteenth Amendment rights by allowing the district attorney to charge Petitioner after they had an agreement, in a previous case, that he would not do so.

(ECF 1).

## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to

the facts bearing on the claim. *Wemark v. Iowa,* 322 F.3d 1018, 1020-21 (8th Cir. Cir. 2003) (quotation marks omitted). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Id.* at 1021. Claims that have not been fairly presented to the state courts are procedurally defaulted. *Id.* at 1022 (*quoting Gray v. Netherland,* 518 U.S. 152, 161-62 (1996)). Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the petitioner can demonstrate cause and prejudice for the default. *Id.*

The United States Supreme Court has held that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. *Dretke v. Haley,* 541 U.S. 386, 388 (2004). *See also Sawyer v. Whitley,* 505 U.S. 333, 338-39 (1992) (absent a showing of cause and prejudice or a miscarriage of justice, a federal habeas court may not reach the merits of a claim procedurally defaulted due to a petitioner's failure to follow applicable state procedural rules in raising the claim in state court); *Coleman v. Thompson,* 501 U.S. 722, 750 (1991) (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; *Battle v. Delo,* 19 F.3d 1547, 1552 (8th Cir. 1994). The United States Supreme Court has held that because the "cause and prejudice standard is not a

perfect safeguard against fundamental miscarriages of justice" the Court has "recognized a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke,* 541 U.S. at 393 (*citing Murray v. Carrier,* 477 U.S. 478, 496 (1986); *Schlup v. Delo,* 513 U.S. 298 (1995)). "[A] habeas petitioner who wishes to have a procedurally defaulted claim evaluated on its merits 'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" *McCoy v. Lockhart,* 969 F.2d 649, 651 (8th Cir. 1992) (citation omitted).

Actual innocence is required to meet the miscarriage-of-justice exception. *See Sweet v. Delo,* 125 F.3d 1141, 1152 (8th Cir. 1997) (citing *Schlup,* 513 U.S. at 316). A "'bare, conclusory assertion' that a petitioner is actually innocent is insufficient to excuse a procedural default." *Sweet,* 125 F.3d at 1152 n.9 (*citing Weeks v. Bowersox,* 119 F.3d 1342, 1352-55 (8th Cir. 1997)). To meet the requisite standard for a probability of innocence a habeas petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of *new* evidence." *Schlup,* 513 U.S. at 327 (emphasis added). *See also Osborne v. Purkett,* 411 F.3d 911, 920 (8th Cir. 2005). Evidence is "new" if it was "not available at trial and could not have been discoverable earlier through the exercise

of due diligence." *Amrine v. Bowersox,* 238 F.3d 1023, 1029 (8th Cir. 2001).

"Cause for a procedural default exists where 'something external to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule.'" *Maples v. Thomas,* 565 U.S. 266, 280 (2012) (alterations in original) (*quoting Coleman,* 501 U.S. at 753) (internal quotation marks and citation omitted). "[T]he precise contours of the cause requirement have not been clearly defined." *Ivy v. Caspari,* 173 F.3d 1136, 1140 (8th Cir. 1999). It has been held that "novel circumstances and arguments" may constitute cause to excuse procedural default. *McKinnon v. Lockhart,* 921 F.2d 830, 833 (8th Cir. 1990). "[T]he Supreme Court [has] recognized that cause may exist when the claim raised is so novel that there was no reasonable basis to have asserted it at the time of a petitioner's state appeals." *Id.* at 833 (*citing Reed v. Ross,* 468 U.S. 1, 16 (1984)). However, "[if] the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." *McKinnon,* 921 F.2d at 833 (*citing Leggins v. Lockhart,* 822 F.2d 764, 766 (8th Cir. 1987)).

In regard to the "prejudice" component of "cause and prejudice," as discussed above, "actual prejudice" is required to overcome the procedural bar. *Zinzer v. Iowa,* 60 F.3d 1296, 1299 n.7 (8th Cir. 1995). The Eighth Circuit holds

that the "'prejudice' component of 'cause and prejudice'" necessary to excuse procedural default is "analytically distinct" from the prejudice required to establish constitutionally ineffective assistance of counsel as articulated in *Strickland v. Washington,* 466 U.S. 668 (1984). *Zinzer,* 60 F.3d at 1299 n.7. The "'actual prejudice' required to overcome the procedural bar must be a higher standard than the *Strickland*" standard. *Id.* (*citing United States v. Frady,* 456 U.S. 152, 165-68 (1982) (holding that to obtain habeas relief on a defaulted claim, a petitioner must clear a significantly higher hurdle than would exist on direct appeal).

Petitioner did not raise the issues of Grounds 1 through 4 either on direct appeal or in the appeal of his post-conviction relief motion. As such, the Court finds that he has procedurally defaulted Grounds 1 through 4. *See Coleman,* 501 U.S. at 731-32; *Wemark,* 322 F.3d at 1020-21. The Court may, therefore, reach the merits of Petitioner's Grounds 1 through 4 only if Petitioner can make a showing of cause and prejudice, or demonstrate "that the failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750.

In support of Grounds 1 through 4, Petitioner does assert that he was innocent of the charges against him. (ECF 1 at 5, 7-10). He supports this claim only with his own declarations; he does not suggest any new evidence which would support his assertion of innocence. As stated above, such a bare assertion of innocence is insufficient to excuse a procedural default. *See Sweet,* 125 F.3d at

1152 n.9.

Liberally construing Petitioner's Petition, Petitioner also asserts ineffective assistance of appellate counsel should excuse his procedural default of Grounds 1 through 4, as he states that his court appointed lawyer would not raise the issue of Ground 1 on appeal (ECF 1 at 6); that he did not raise the issue of Ground 2 on appeal because his "State appointed counsel was working with the State to violate [his] rights" (ECF 1 at 7); that State appointed counsel would not raise the issue of Ground 3 on appeal (ECF 1 at 9); and that he took Ground 4 "as far as [his] State appointed attorney would take it" (ECF 1 at 10).

In regard to ineffectiveness of counsel as grounds to excuse procedural default, "[i]neffective assistance of trial or appellate counsel may be cause excusing a procedural default." *Williams v. Kemna,* 311 F.3d 895, 897 (8th Cir. 2002) (*citing Murray v. Carrier,* 477 U.S. 478, 491-92 (1986)). "However, in order to urge ineffective assistance as cause excusing a procedural default, the federal habeas petitioner must have properly raised the ineffectiveness claim in state court." *Williams,* 311 F.3d at 897 (*citing Edwards v. Carpenter,* 529 U.S. 446, 450-53 (2000); *Tokar v. Bowersox,* 198 F.3d 1039, 1051 n.13 (8th Cir. 1999)). Petitioner did argue, before the motion court and the Missouri appellate court that direct appeal counsel was ineffective for failing to argue that there was insufficient evidence to establish that the substance Petitioner delivered was a controlled

substance and for failing to argue that Petitioner's trial counsel was ineffective for failing to introduce evidence that the police investigated Petitioner before he was arrested and charged in the underlying criminal case. (ECF 9.8).

"'[A]ttorney error that results in a procedural default' is not cause [to excuse procedural default] unless the attorney's performance was constitutionally deficient." *Interiano v. Dormire,* 471 F.3d 854, 857 (8th Cir. 2006) (*quoting Armstrong v. Iowa,* 418 F.3d 924, 927 (8th Cir. 2005) (additional citation omitted). The Supreme Court held, in *Martinez v. Ryan*, 132 S.Ct. 1309, 1320 (2012), that post-conviction counsel's failure to present a claim may be cause to for procedural default where there is a reasonable probability that, had post-conviction counsel raised the claim, "the proceedings would have gone differently," but that "[a] finding of cause and prejudice does not [necessarily] entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted." With these principles in mind, the Court will address the merits of Petitioner's Grounds 1 through 4. *See Martinez,* 132 S.Ct. at 1320.

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. Petitioner's § 2254 Petition is timely filed.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. §

2254 (AEDPA), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. *Lindh v. Murphy,* 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" *Evenstad v. Carlson,* 470 F.3d 777, 782-83 (8th Cir. 2006) (*quoting Williams v. Taylor,* 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably. *Evenstad,* 470 F.3d at 783 (*citing Buchheit v. Norris,* 459 F.3d 849, 853 (8th Cir. 2006); *Owsley v. Bowersox,* 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. § 2254(d)(1)." *Evenstad,* 470 F.3d at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established'" under 28 U.S.C. § 2254(d)(1). *Id.* at 783 (*citing Tunstall v. Hopkins,* 306 F.3d 601, 611 (8th Cir. 2002)).

In *Williams,* 529 U.S. 362, the Supreme Court set forth the requirements for

federal courts to grant writs of habeas corpus to state prisoners under § 2254. The

Court held that "§ 2254(d)(1) places a new constraint on the power of a federal

habeas court to grant a state prisoner's application for writ of habeas corpus with

respect to claims adjudicated on the merits in the state court." *Id.* at 412. The

Court further held that the writ of habeas corpus may issue only if the state-court

adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as
> determined by the Supreme Court of the United States," or
> (2) "involved an unreasonable application of . . . clearly
> established Federal Law, as determined by the Supreme
> Court of the United States." Under the "contrary to" clause,
> a federal habeas court may grant the writ if the state court
> arrives at a conclusion opposite to that reached by this Court
> on a question of law or if the state court decides a case
> differently than this Court has on a set of materially
> indistinguishable facts. Under the "unreasonable
> application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal
> principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

*Williams,* 529 U.S. at 412-13.

Where a federal constitutional question is not adjudicated on its merits in

state court proceedings, it is not appropriate for a federal court to apply the

standard of § 2254, as amended by the AEDPA, because there is no apparent state-

court adjudication to which this standard can be applied. *Robinson v. Crist,* 278

F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated

by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." *Id.* at 865-66 (*quoting Hamilton v. Nix,* 809 F.2d 463, 470 (8th Cir. 1987) (en banc)).

## DISCUSSION

**Ground 1:**

In Ground 1, Petitioner asserts that the State violated his Fourth Amendment rights by arresting him without probable cause. In support of Ground 1, Petitioner argues that when he was arrested, he was handcuffed, put inside of a police car, and was not free to leave, and that, when he was arrested, he had not broken any laws and had no contraband on his person "after an illegal search was done on [him]." (ECF 1 at 5).

Federal law applicable to Petitioner's Ground 1 provides that, in order to obtain relief as a result of an alleged illegal arrest, a habeas petitioner must establish that evidence used against him during the alleged illegal arrest was used against him and that he was prejudiced as a result. *Mastrian v. McMannus,* 554 F.2d 813, 820 (8th Cir. 1977) (noting that the petitioner admitted and the state court found that "no evidence or incriminating statements obtained as a consequence of

the arrest were admitted at trial" and holding that where petitioner asserts that his warrantless arrest was illegal, a court must decide "whether the adverse consequences flowing from that arrest were harmless beyond a reasonable doubt"). *See also Collins v. Swenson,* 443 F.2d 329, 331 (8th Cir. 1971) ("[A]ssuming arguendo that defendant's arrest and detainment were illegal, this does not in any way prejudice his conviction when the evidence used in the trial itself does not flow from the arrest."). Petitioner, however, has not pointed to any evidence used against him that was obtained during his alleged illegal arrest and has not suggested how he was prejudiced as a result of his alleged illegal arrest. *See Mastrian,* 554 F.2d at 820.

Federal law, moreover, provides that a defendant "cannot claim immunity from prosecution simply because his appearance in court was precipitated by an unlawful arrest. An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews,* 445 U.S. 463, 474 (1980) (*citing Gerstein v. Pugh,* 420 U.S. 103, 119 (1975) (other citations omitted). A defendant is not "himself the 'fruit' [of an unlawful search or seizure], and the illegality of his detention cannot deprive the [State] of the opportunity to prove his guilt through the introduction of evidence wholly untainted by [] police misconduct." *Crews,* 445 U.S. at 474. The Court finds, therefore, that Petitioner has not demonstrated a reasonable probability that

the error of which he complains in Ground 1 affected the outcome of his trial or that it affected the verdict against him. *See Crews,* 445 U.S. at 474; *Mastrian,* 554 F.2d at 820; *Robinson,* 278 F.3d at 865-66. As such, the Court further finds that Petitioner's Ground 1 is without merit and that habeas relief on its basis should be denied.

**Ground 2:**

In Ground 2, Petitioner contends that the State violated his Fourth, Fifth, Sixth and Fourteenth Amendment rights "by charging [him] with an invalid probable cause affidavit." In support of Ground 2, Petitioner argues that he "was charged and arrested before there was knowledge of a crime"; that the crime for which he was charged "never happened"; that "the probable cause statement was made with a reckless disregard for the truth"; that it was exactly the same probable cause statement that was "used in another case against [him]"; that the probable cause statement could not be used in both cases; and that he is innocent. (ECF 1 at 7).

Petitioner has not suggested any evidence to support his claim that the "probable cause affidavit" was invalid or to establish that he was prejudiced as a result of the alleged invalid probable cause affidavit. *See Mastrian,* 554 F.2d at 820. As discussed in regard to Petitioner's Ground 1, even if the "probable cause affidavit" which was the basis for Petitioner's arrest, prosecution, and ultimate

conviction was flawed, his alleged illegal arrest is "not a defense to [his] valid conviction." *Crews,* 445 U.S. at 474.

The Court finds, therefore, that Petitioner has not demonstrated a reasonable probability that the error of which he complains in Ground 2 affected the outcome of his trial or that it affected the verdict against him. *See Crews,* 445 U.S. at 474; *Mastrian,* 554 F.2d at 820; *Robinson,* 278 F.3d at 865-66. As such, the Court further finds that Petitioner's Ground 2 is without merit and that habeas relief on its basis should be denied.

**Ground 3:**

In Ground 3, Petitioner contends that the State violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights by charging him with a crime without jurisdiction. In support of Ground 3, Petitioner argues that the State presented no facts to support its case; that he was not "ever in Missouri until [his] illegal arrest"; that there were "no drug[s] from any alleged sale"; that he is "innocent"; and that the court could not have jurisdiction over a crime which did not happen. (ECF 1 at 8).

To the extent Petitioner argues that the State did not have jurisdiction to charge him with a crime, Petitioner presents a question of State law. Issues concerning the interpretation and application of state law are not cognizable in federal habeas review. *See Poe v. Caspari,* 39 F.3d 204, 207 (8th Cir. 1994)

(holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts; "'no federal court to our knowledge has ever granted a writ where a state court's asserted lack of jurisdiction resulted solely from the provisions of state law.'") (*quoting Roche v. Scully,* 739 F.2d 739, 741-42 (2nd Cir. 1984) (internal citation omitted). *See also Higgins v. Smith,* 991 F.2d 440, 442 (8th Cir. 1993) (error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition).

Further, Mo. Rev. Stat. § 541.191.1 provides that the State has jurisdiction over a crime if: "(1) Conduct constituting any element of the offense or a result of such conduct occurs within this state; or (2) The conduct outside this state constitutes an attempt or conspiracy to commit an offense within this state and an act in furtherance of the attempt or conspiracy occurs within this state."

As discussed above, Petitioner did not raise the issue of Ground 3 before the Missouri Appellate Court. According to the Missouri Appellate Court, however, upon its considering the issue of whether there was sufficient evidence to find Petitioner guilty of distribution or delivery of a controlled substance,[2] after he

---

[2]  In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." *Hall v. Luebbers,* 341 F.3d 706, 712 (8th Cir. 2003) (*citing*

waived his *Miranda* rights, Petitioner "admitted to [] officers that he delivered" methamphetamine to Annette "Garrett shortly after he met her in June 2010" and again in August 2010. (ECF 9.3 at 3). As further held by the Missouri Appellate Court, officers testified that Petitioner told them that these transactions took place in *Marion County, Missouri*. (ECF 9.3 at 12; ECF 9.12 at 137, 142-43, 177-78). The appellate court concluded that the officers' testimony "provide[d] a sufficient basis for the jury to find [Petitioner] delivered and distributed a controlled substance to Garrett *in Marion County, Missouri*." (ECF 9.3 at 13) (emphasis added).

As such, the Court finds that Petitioner has not demonstrated a reasonable probability that the error of which he complains in Ground 3 affected the outcome of his trial or that it affected the verdict against him. *See Robinson,* 278 F.3d at

28 U.S.C. § 2254(e)(1); *Lomholt v. Iowa,* 327 F.3d 748, 752 (8th Cir. 2003)). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. *Rushen v. Spain,* 464 U.S. 114, 120 (1983); *Marshall v. Lonberger,* 459 U.S. 422, 432 (1983). Additionally, a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. *Ashker v. Class,* 152 F.3d 863, 867 (8th Cir. 1998) (*citing* 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); *Smith v. Jones,* 923 F.2d 588, 590 (8th Cir. 1991)). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. *See Case v. Mondragon,* 887 F.2d 1388, 1393 (10th Cir. 1989) (*citing Marshall,* 459 U.S. at 431-32; *Cuyler v. Sullivan,* 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." *Id.* (*citing Brown v. Allen,* 344 U.S. 443, 506 (1953)). Mixed questions of law and fact, however, are not entitled to a presumption of correctness pursuant to § 2254(d). *Cornell v. Nix,* 976 F.2d 376, 382 (8th Cir. 1992).

865-66.  The Court finds, therefore, that Petitioner's Ground 3 is without merit and that habeas relief on its basis should be denied.

To the extent Petitioner's Ground 3 may be construed as a challenge to the sufficiency of the evidence to convict him of the charges against him, the Missouri Appellate Court summarized the evidence against Petitioner as follows:[3]

> Annette Garrett ("Garrett") bought methamphetamine from Jacob Humphrey ("Humphrey"), who purchased his methamphetamine from Pennell.  When Humphrey was arrested on June 3, 2010, Pennell began delivering methamphetamine directly to Garrett.  Garrett and Pennell subsequently entered into a sexual relationship.
>
> In September 2010, Captain Patti Talbert ("Capt. Talbert") with the Northeast Missouri Narcotics Task Force obtained consent from Garrett to search her home and workplace after she was arrested as part of an undercover sting operation.  A half ounce of methamphetamine was found in Garrett's basement at her home and a small bar of methamphetamine was found in Garrett's desk drawer at work.  Garret told Capt. Talbert and another officer, Detective Michael Murphy ("Det. Murphy") that Pennell delivered the methamphetamine to her at her home in Marion County, and that the first delivery occurred sometime between June 9 and June 24, 2010.
>
> Pennell was arrested on September 15, 2010, and agreed to speak with Capt. Talbert and Det. Murphy after waiving his *Miranda* rights.  Pennell admitted to the officers that he delivered a quarter of an ounce of methamphetamine to Garrett shortly after meeting her in June 2010 and four ounces of methamphetamine to Garrett in August 2010.

(ECF 9.3 at 2-3).

The Missouri Appellate Court further held:

---

[3] *See* note 1.

Under Section 195.211, "[i]t is unlawful for any person to distribute [or] deliver . . . a controlled substance." Section 195.211. Distribute is defined as "to deliver other than by administering or dispensing a controlled substance." Section 195.010(12). Deliver is defined within that same statute as "the actual, constructive, or attempted transfer from one person to another of drug paraphernalia or of a controlled substance, or an imitation controlled substance, whether or not there is an agency relationship, and includes a sale." Section 195.010(8). Since Section 195.211 does not prescribe a mental state, the crime is committed if the defendant knowingly distributed or delivered a substance he knew was a controlled substance. *See* Section 562.021.3; Notes on Use to MAI-CR3d 325.04.1. Thus, if the record contains evidence that Pennell knowingly possessed methamphetamine and transferred it to Garrett, such actions would meet the requirements of delivery and distribution as set forth in to Section 195.211. *See Kellner,* 103 S.W.3d at 365-66.

Here, both Capt. Talbert and Det. Murphy testified that Pennell admitted to delivering methamphetamine to Garrett in June 2010 at her home in Marion County and that he charged her $1,000 for a quarter of an ounce of the drug. Capt. Talbert and Det. Murphy also testified that Pennell told them he delivered approximately four ounces of methamphetamine to Garrett in August 2010 at her home in Marion County. Capt. Talbert said that Pennell admitted to charging Garrett $3,200 for each ounce.

Pennell argues that Garrett's testimony at trial disputed Capt. Talbert and Det. Murphy's testimony. At trial, Garrett admitted that Pennell delivered methamphetamine to her but denied that it occurred in June or August 2010 or at her home in Marion County. However, Garrett further testified that she did not remember much about that summer because she was using a lot of methamphetamine that she got from Pennell and that she was not happy about having to testify against Pennell.

Pennell's argument fails because the jury could have disregarded Garrett's testimony and found the testimony of Capt. Talbert and Det. Murphy to be more credible. It is the duty of the jury to determine the credibility of witnesses, resolve conflicts in testimony, and weigh evidence. *State v. Williams,* 313 S.W.3d 656,

660 (Mo. banc 2010). "The jury is permitted to draw such reasonable inferences from the evidence as the evidence will permit and may believe or disbelieve all, part, or none of the testimony of any witness." *Id.* Upon appellate review, when the evidence admitted could support "two equally valid inferences, only the inference that supports the finding of guilt can be considered." *State v. Hines,* 377 S.W.3d 648, 654 (Mo. App. S.D. 2012) (citation omitted).

Here, the officers testified that Pennell admitted delivering methamphetamine to Garrett, at her home, in June and August of 2010. The jury was free to believe this evidence over the testimony of Garrett, who was romantically involved with Pennell and was reluctant to testify against him. The presence of conflicting testimony does not render a jury's finding of fact insufficient to support a verdict as a matter of law. Instead, we consider whether the record, taking into account such conflict and inconsistencies, nevertheless, contains sufficient evidence from which a reasonable jury could find the defendant guilty of the crime charged. The testimony of Capt. Talbert and Det. Murphy provides a sufficient basis for the jury to find Pennell delivered and distributed a controlled substance to Garrett in Marion County, Missouri. Thus, the evidence was sufficient for a reasonable jury to find Pennell guilty. Point Three is denied.

(ECF 9.3 at 11-13).

Notably, upon considering whether the evidence was sufficient to convict Petitioner, the Missouri appellate court considered the requirements of the statute of which Petitioner was charged, Mo. Rev. Stat. § 195.211, and concluded that the evidence was sufficient to establish that Petitioner was guilty of distributing or delivering a controlled substance as provided by that statute. As discussed above, issues concerning the interpretation and application of state law are not cognizable in federal habeas review. *See Poe,* 39 F.3d at 207.

Further, the United States Supreme Court stated in *Wright v. West,* that "a

claim that evidence is insufficient to support a conviction as a matter of due process depends on 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" 505 U.S. 277, 283-84 (1992) (*citing Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Jackson,* 443 U.S. at 319. *See also Whitehead v. Dormire,* 340 F.3d 532, 536 (8th Cir. 2003) ("We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution.") (internal citations omitted); *Weston v. Dormire,* 272 F.3d 1109, 1111 (8th Cir. 2001) ("In determining the sufficiency of the evidence in habeas cases under 28 U.S.C. § 2254, we view the evidence in the light most favorable to the prosecution and decide whether any rational jury could have found, beyond a reasonable doubt, all of the elements of the crime.") (*citing Jackson,* 443 U.S. at 319, 321, 324; *Loeblein v. Dormire,* 229 F.3d 724, 726 (8th Cir. 2000)).

Thus, the scope of a federal court's review of a state court's determination that there was sufficient evidence to support a conviction is "extremely limited." *Skillicorn v. Luebbers,* 475 F.3d 965, 977 (8th Cir. 2007). In order to be entitled to

habeas relief, the petitioner must demonstrate not only that no rational trier of fact could have found the elements of the crime beyond a reasonable doubt, but also that it was unreasonable for the State court to determine otherwise. *Garrison v. Burt,* 637 F.3d 849, 854-55 (8th Cir. 2011) ("Constitutionally, sufficient evidence supports a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"); "[b]ecause [the] AEDPA only allows us to grant habeas relief if there was 'an unreasonable application of [] clearly established Federal law,' 28 U.S.C. § 2254(d)(1), we may grant relief only if we find the Iowa Court of Appeals' conclusion that the evidence satisfied the *Jackson* sufficiency of evidence standard 'both incorrect and unreasonable."). Critically, "this standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson,* 443 U.S. at 324 n.16.

The Court finds, in view of the evidence presented at trial, that the decision of the Missouri appellate court is neither incorrect nor unreasonable. *See Garrison,* 637 F.3d at 854-55. Thus, to the extent that Petitioner's Ground 3 is cognizable pursuant to federal habeas review, the Court further finds that Petitioner's Ground 3 is without merit and that relief should not be granted on its basis.

**Ground 4:**

In Ground 4 Petitioner asserts that the State violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights when the prosecuting attorney charged him after the prosecutor had agreed not to file charges. In support of Ground 4, Petitioner argues that the prosecuting attorney had agreed not to charge him in a previous case. (ECF 1 at 10).

Petitioner has provided the Court with no evidence, other than his own statement, that the State agreed not to file criminal charges against Petitioner. The Court's review of the trial transcript reflects that, on the day of Petitioner's trial, prior to jury selection, the State asked leave to file an amended information, which was identical to the prior information except that it stated that Petitioner was a prior and persistent offender. Defense counsel objected to the filing of the amended information and stated that:

> [T]here was a charge filed that said from January 2010 to September 2010 [Petitioner] sold methamphetamine in Liberty Township in Marion County. The prosecutor and a prior defense counsel [] entered into an agreement whereby [Petitioner] waived his preliminary hearing in that matter in exchange for the promise that there would not be a prior/persistent pursued in [the current] case. Now we're finding that they are attempting to do that.

(ECF 9.12 at 66).

The prosecutor responded, stating:

> [T]hat was in a case in Liberty Township in Palmyra where [Petitioner] delivered two pounds of marijuana and a sizeable amount

of methamphetamine to a totally different person. I lived up to that bargain by not making him a prior and persistent – or persistent offender in that case.

…

He then said I need a more definite statement; I don't know what I'm being charged with. I told his attorney there are multiple acts here. I will be happy to pick one of them and we'll go to trial in Palmyra, and I did. It was delivery to or attempt to deliver to Jake Humphrey. It didn't have anything to do with these allegations. I filed these new allegations. So the agreement that we had in that case doesn't have anything to do with this case.

…

In fact, he didn't waive his preliminary hearing in this case. We had a preliminary hearing and here we are.

(ECF 9.12 at 66-67).

Upon being questioned by the court, Defense counsel stated that there was, in fact, a preliminary hearing in the matter before the court and that Petitioner "didn't waive in this case." Counsel stated that, "I think that deal was already made, and it was not as a persistent offender in [the current] case when we asked for the prelim." (ECF 9.12 at 67). The court then overruled counsel's objection and allowed the amended information charging Petitioner as a prior and persistent offender to be filed. (ECF 9.12 at 67). After the prosecutor presented evidence on the issue, the court found that Petitioner was a prior and persistent offender. (ECF 9.12 at 67-69).

Also, the State dismissed Count III of the Amended Information, which

alleged that Petitioner had delivered two pounds of marijuana in Palmyra and delivered cocaine to Garrett in Hannibal.  The prosecutor informed the court that he was going to re-file Count III as part of a new three-count complaint against Petitioner.  (ECF 9.12 at 70).  Thus, the record reflects that the only agreement Petitioner had with the State was that the State would not pursue prior and persistent offender status in another of Petitioner's criminal cases.  (ECF 9.12 at 66).

As such, the Court finds that Petitioner has not demonstrated a reasonable probability that the error of which he complains in Ground 4 affected the outcome of his trial or that it affected the verdict against him.  As such, the Court finds that Petitioner's Ground 4 is without merit and that habeas relief on its basis should be denied.

## CONCLUSION

For the reasons discussed above, the Court finds that Petitioner procedurally defaulted the issues of Grounds 1 through 4; that he has not established cause and prejudice to excuse his procedural default; and, alternatively, that Petitioner's Grounds 1 through 4 are without merit.  As such, the Court further finds that Petitioner's Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 should be denied and dismissed in its entirety.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF 1) is **DENIED**, and his claims are **DISMISSED**, with prejudice;

**IT IS FURTHER ORDERED** that a separate Order of Dismissal will accompany this Memorandum and Order; and

**IT IS FINALLY ORDERED** that, because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See Cox v. Norris,* 133 F.3d 565, 569 (8th Cir. 1997). Dated this 13th Day of July 2018.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE